DOA: 3/13/20025

# UNITED STATES DISTRICT COURT
for the

| | | |
|---|---|---|
| United States of America | ) | Case No.  25-6114MJ |
| v. | ) | |
| Sotero Perez-Hernandez, | ) | |
| Jonathan Platt-Jones, and, | ) | |
| Blanca Roque, | ) | |
| Defendants | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

### COUNT 1

Beginning on an unknown date and continuing through on or about March 13, 2025 in the District of AZ, the defendants, SOTERO PEREZ-HERNANDEZ, JONATHAN PLATT-JONES, and BLANCA ROQUE, did knowingly and willfully combine, conspire, confederate, and agree with persons known and unknown, knowing or in reckless disregard of the fact that certain aliens, namely Romero Hernandez-Espinoza and Daniel Espinoza-Hernandez had come to, entered, or remained in the United States in violation of law, did conceal, harbor, or shield from detection, or attempt to conceal, harbor, or shield from detection, such aliens in any place, including any building or any means of transportation, and in furtherance of such violation of law.

In violation of Title 8, United States Code, Sections Title 8 U.S.C. §§ 1324(a)(1)(A)(iii) and 1324(a)(1)(A)(v)(I).

### COUNT 2

On or about March 13, 2025, at or near Phoenix, AZ, in the District of AZ, the defendant, SOTERO PEREZ-HERNANDEZ, an alien, was found in the United States after having been previously denied admission, excluded, deported, and removed from the United States at or near Nogales, AZ, on or about November 16, 2017, and not having obtained the express consent of the Attorney General or the Secretary of Homeland Security to reapply for admission to the United States.

In violation of Title 8, United States Code, Section 1326(a).

## COUNT 3

On or about March 13, 2025, in the District of Arizona, Defendant SOTERO PEREZ-HERNANDEZ, knowing he was an alien illegally and unlawfully in the United States, did knowingly possess a firearm, to wit:

(1) a Taurus G3 9mm pistol, serial number; ACE964192, and,

(2) Walther CCP M2 9mm, serial number: WK115203,

which had previously been shipped or transported in interstate or foreign commerce.

All in violation of Title 18, United States Code, Sections 922(g)(5) and 924(a)(8).

This criminal complaint is based on these facts:

See Attached Statement of Probable Cause, Incorporated by Reference Herein

☒ Continued on the attached sheet.

Reviewed by AUSA Louie Uhl

MATTHEW R OXENDINE
Digitally signed by MATTHEW R OXENDINE
Date: 2025.03.14 07:57:55 -07'00'

*Complainant's signature*

HSI Special Agent, Matthew Oxendine
*Printed name and title*

Sworn to telephonically.

Date: March 14, 2025@9:02am

*Judge's signature*

City and state: Phoenix, AZ

Honorable Alison S. Bachus, U.S. Magistrate Judge
*Printed name and title*

## STATEMENT OF PROBABLE CAUSE

I, Matthew Oxendine, Special Agent with Homeland Security Investigations, being duly sworn, declare and state as follows:

## INTRODUCTION AND BACKGROUND OF AFFIANT

1. I am a Special Agent (SA) with Homeland Security Investigations (HSI) and have been for over 8 years. I am currently assigned to the Phoenix, AZ Office. As a SA, I am authorized to investigate violations of the laws of the United States and am a law enforcement officer within the meaning of 18 U.S.C. § 2510(7). Prior to becoming a SA, I was a law enforcement officer at the Yuma Police Department for 7 years. During my time at the Yuma Police Department, I served as a patrol officer and detective assigned to the Special Operations Unit.

2. As a SA, I have attended the investigator training program at the Federal Law Enforcement Training Center (FLETC). During my training, I learned how to conduct investigations into offenses enumerated in Title 8, Title 18, Title 21, and Title 31 of the United States Code.

3. During my past 15 years in law enforcement, I have experience in conducting physical surveillance, interviewing witnesses, writing affidavits for warrants, and executing warrants for arrests and searches. I routinely access multiple databases and intelligence-based systems throughout my investigations and have participated in numerous interagency and international investigations.

4. By virtue of his employment as a Special Agent with HSI BEST 1, your Affiant has performed various tasks, which include, but are not limited to:

   a. Functioning as a surveillance agent, thus observing and recording movements of persons trafficking in alien smuggling and those suspected of alien smuggling;

   b. Interviewing witnesses and sources of information (SOI) relative to alien smuggling and the distribution of monies and assets derived from alien smuggling (laundering of monetary instruments);

  c. Functioning as a case agent, entailing the supervision of specific investigations involving alien smuggling and the laundering of monetary instruments; and

  5. In the course of conducting alien smuggling investigations, your Affiant has personally interviewed persons involved in the smuggling aliens and facilitation of alien smuggling. Your Affiant has consulted with other experienced investigators concerning the practices of alien smuggling and the best methods of investigating them. In preparing this affidavit, your Affiant has conferred with other Special Agents and other law enforcement officers, who share the opinions and conclusions stated herein. Furthermore, your Affiant has personal knowledge of the following facts or has learned them from the individual(s) mentioned herein.

  6. Your Affiant is also familiar with the ways in which alien smuggling conduct their illegal business, including methods of smuggling and transporting, money laundering, the use of cellular telephones and the internet to facilitate their illegal acts, and the use of numerical codes and word substitution to conduct alien smuggling transactions.

  7. The statements contained in this Affidavit are based in part on information provided to your Affiant by Special Agents of the HSI, other law enforcement officers, or other witnesses, either directly or indirectly through their reports or affidavits; surveillance conducted by law enforcement officers.

  8. The facts in this affidavit also come from your Affiant's personal observations, training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of your Affiant's knowledge about this matter.

## **PROBABLE CAUSE**

9. Sometime in June 2023, a source of information (SOI) contacted the Federal Bureau Investigation (FBI) and provided information that Sotero PEREZ-HERNANDEZ was involved in alien smuggling. They were able to provide PEREZ-HERNANDEZ's stash house addresses and claimed to have work for him.

10. HSI agents identified multiple money wire transactions from December of 2023 to January of 2024 involving PEREZ-HERNANDEZ. PEREZ-HERNANDEZ provided his year of birth as 1994, his phone number as (480) 957-2502, and his address as XXXX[1] W. Holly St., Phoenix, AZ—an address the SOI identified. PEREZ-HERNANDEZ also provided an additional address, XXXX N. 35th Ave, Phoenix, AZ – which the SOI also provided as a stash house location. In addition, some of the transactions involved sending money to and from Blanca ROQUE.

11. Subsequently, on November 7, 2024, Border Patrol Agents assigned to the Douglas Border Patrol Immigration Checkpoint on State Route 191 arrested Jonathan PLATT-JONES for alien smuggling. An analysis of the phone seized from PLATT-JONES showed that the phone had been present at XXXX N. 35th Ave, Phoenix, AZ – an address provided by SOI as one of PEREZ-HERNANDEZ's stash houses.

12. On February 11, 2025, a Federal Pen Register Trap and Trace (PRTT) order and tracking warrant was issued for phone number 480-957-2502, PEREZ-HERNANDEZ's known number.

13. The analysis of cell phone tracking data placed the phone in the area of 4220 N. 69th Ln., Phoenix, AZ during the nighttime hours, from approximately 10:00 P.M. to 3:00 A.M. The tracking also placed the phone returning to the same vicinity throughout the day.

14. The tracking also revealed a pattern of leaving 4220 N. 69th Ln., Phoenix early in the morning between 3:00 A.M. and 5:00 A.M. and travelling to San Tan Valley, AZ, about 60 miles southeast of the Phoenix area.

---

[1] Exact address is known to law enforcement but redacted for privacy purposes.

15. Based on physical surveillance and consistent with the phone data, agents observed PEREZ-HERNANDEZ, and three male subjects exit 4220 N. 69th Ln. Apt. XXXX, Phoenix, AZ (hereafter the "residence") and enter a 2021 Black Nissan Sentra (Nissan). PEREZ-HERNANDEZ transported them to San Tan Valley, AZ. PEREZ-HERNANDEZ would drop off the males in the early morning and drive the same subjects back to the residence in the mid-afternoon.

16. On March 12, 2025, HSI Agents applied for and were granted a residential search warrant for the residence.

17. On March 13, 2025, agents observed PEREZ-HERNANDEZ and unknown males exit the apartment and enter the Nissan. After the vehicle left the apartment complex, agents conducted a vehicle stop. PEREZ-HERNANDEZ was the driver while and three other male subjects were in the passenger area. Agents identified the three male passengers as Adan HERNANDEZ-Aguilar, Daniel ESPINOZA-Hernandez (material witness), and Romero HERNANDEZ-Espinoza (material witness), whom all were illegal aliens from Mexico.

18. During the execution of the search warrant, agents found and detained a total of seven other individuals, six of whom were illegal aliens (hereinafter "IAs").

19. PLATT-JONES and ROQUE were inside the residence at the time of the execution of the residential warrant. PLATT-JONES is a U.S. citizen. ROQUE is a Mexican citizen.

20. ROQUE is believed to be in a relationship with PEREZ-HERNANDEZ.

21. In addition to the IAs, agents also found alien smuggling ledgers of money owed/collected from each person residing in the household and false identification cards belonging to the subjects residing at the subject residence.

22. Agents located two handguns, to wit: a Taurus G3 9mm pistol, serial number; ACE964192, and Walther CCP M2 9mm, serial number: WK115203 in a dresser in a bedroom shared by PEREZ-HERNANDEZ and ROQUE.

23. The IAs were interviewed separately. Each conveyed they were all connected as family in some way but had to pay money to PEREZ-HERNANDEZ and ROQUE to stay at the residence. Some of the IAs claimed to work for contracting companies or side jobs.

24. Material Witnesses Romero Hernandez-Espinoza and Daniel Espinoza-Hernandez were interviewed separately, and their statements were recorded. Both admitted to being a citizen of Mexico with no permission to be in the United States. Each paid approximately $200.00 to remain at the residence. Finally, each admitted to having resided at the residence for approximately the preceding two months.

25. During a recorded post-*Miranda* interview, PEREZ-HERNANDEZ admitted to illegally entering the United States about a year and half ago. PEREZ-HERNANDEZ also admitted to coordinating the smuggling of IAs since 2023. PEREZ-HERNANDEZ said he has only coordinated with the smuggling of 20 IAs from the United States/ Mexico border to the interior of the United States. PEREZ-HERNANDEZ claimed to have last smuggled illegal aliens in November 2024 and that associates in Mexico had threated to kill his family and had tried to abduct his mother.

26. PEREZ-HERNANDEZ admitted that one of the two firearms located in his room was his but claimed that the other firearm belonged to PLATT-JONES. PEREZ-HERNANDEZ admitted that he knew that it was illegal for him, as an IA, to be in possession of a firearm. PEREZ-HERNANDEZ explained that, along with ROQUE, they run the residence and are paid roughly $200 from each IA for rent, lodging and supplies.

27. During a recorded *post-Miranda* interview, PLATT-JONES told agents that he had been living with PEREZ-HERNANDEZ for the past several months. PLATT-JONES said that the rent for the residence is $2,040 a month, divided by 10 people. PLATT-JONES stated that PEREZ-HERNANDEZ drives occupants of the residence back and forth to work and is paid by the workers for doing so.

28. PLATT-JONES stated that many of the IAs in the subject residence are related to each other, and that ROQUE is dating or married to PEREZ-HERNADNEZ.

PLATT-JONES stated that PEREZ-HERNANDEZ travels to Los Angeles to get paid and brings the money back to Phoenix. PLATT-JONES stated that he transports IAs for PEREZ-HERNANDEZ and was about to transport more. PLATT-JONES claimed that both firearms found at the residence belong to PEREZ-HERNANDEZ.

29. During a recorded *post-Miranda* interview at the HSI field office in Scottsdale, AZ, ROQUE told agents that she has been living with PEREZ-HERNANDEZ at the subject residence for approximately 11 months and in a romantic relationship. ROQUE stated that PEREZ-HERNANDEZ is paid to drive the occupants of the residence to the jobsite with the construction company. ROQUE stated that she and PEREZ-HERNANDEZ collect money for rent approximately $1,800 in U.S. currency from each of the people that live at the apartment.

30. ROQUE stated that she and PEREZ-HERNANDEZ have transported aliens to Los Angles together and added that she once transported a Mexican federal police officer from the border area to Denver, Colorado. ROQUE told agents that she and PEREZ-HERNANDEZ were paid $600.00. ROQUE added that the two firearms in the bedroom shared by ROQUE and PEREZ-HERNANDEZ belong to PEREZ-HERNANDEZ.

31. ATF Senior Special Agent was provided the make, model and serial number of the firearms. Based upon that information, he determined both firearms were manufactured outside of the District of Arizona and had travelled in interstate commerce to be found in Arizona.

32. Based on the facts and circumstances stated in this Affidavit, I submit there is probable cause to believe that the defendants, SOTERO PEREZ-HERNANDEZ, JONATHAN PLATT-JONES, and BLANCA ROQUE, did knowingly and willfully combine, conspire, confederate, and agree with persons known and unknown, knowing or in reckless disregard of the fact that certain aliens had come to, entered, or remained in the United States in violation of law, did conceal, harbor, or shield from detection, or attempt to conceal, harbor, or shield from detection, such aliens in any place, including any building or any means of transportation, and in furtherance of such violation of law, in violation of

Title 8, United States Code, Sections Title 8 U.S.C. §§ 1324(a)(1)(A)(iii) and 1324(a)(1)(A)(v)(I).

33. Via his alien registration number, biographical information and admissions, agents also determined that PEREZ-HERNANDEZ, an alien, was found in the United States after having been previously denied admission, excluded, deported, and removed from the United States at or near Nogales, AZ, on or about November 16, 2017, and not having obtained the express consent of the Attorney General or the Secretary of Homeland Security to reapply for admission to the United States.

34. Additionally, while PEREZ-HERNANDEZ was present illegally in the United States he was in possession of two firearms which were located in his room.

35. This affidavit was sworn to telephonically before a United States Magistrate Judge legally authorized to administer an oath for this purpose.

MATTHEW R OXENDINE
Digitally signed by MATTHEW OXENDINE
Date: 2025.03.14 07:58:38 -07'

Matthew Oxendine
Special Agent
Homeland Security Investigations

Sworn to telephonically this 14th day of March, 2025.

_____
HONORABLE Alison S. Bachus
United States Magistrate Judge